### T. F. & W. L. STRONG *v.* JEPTHA BRADLEY.

When the creditor in committing an execution to an officer, for collection, gives written instructions, and, on trial of an action against the officer for neglect in collecting the same, the instructions are relied upon by way of defence, it is the duty of the court to direct the jury in regard to the legal effect of such instructions.

If the creditor give such instructions to a deputy sheriff, and the deputy is, in any degree, influenced thereby, the sheriff is not liable for his conduct in regard to the matter.

If such instructions would in any sense qualify the conduct of the officer, his acts must be referred to them, unless it be shown by positive proof that he was not influenced thereby.

Where there is no proof in the case tending to show that the officer was actuated exclusively by some other consideration, this point cannot be submitted to the jury.

THIS was an action on the case against the defendant, as sheriff of the county of Franklin, for not levying and collecting an execution in favor of the plaintiffs against one Joel Wilson, and for neglecting to make a return of *non est inventus* on the same, so as to charge the bail on the original writ. The plea was the general issue, and trial by jury.

It appeared, on the trial in the county court, that the execution came into the hands of the deputy of the defendant about the 11th of December, A. D. 1837, in a letter from the plaintiff's attorney hereafter set forth, and within thirty days from the rendition of the judgment, and it was conceded, on trial, that the execution had not been collected nor paid to the plaintiffs, and that no return of *non est inventus* had been made on it, and that it had not been in any way executed; and that the plaintiffs had called upon the defendant for the payment of the execution before this suit was brought.

In the defence, the defendant gave in evidence the letter from the attorney of the plaintiffs, which was as follows, to wit:

'Burlington, 11 December, 1837.

'Sir—I enclose you the execution T. F. & W. L. Strong
'*v.* Joel Wilson. Should you find it necessary to take any
'other course than the straight forward one, you will please
'advise me.'

The defendant called Fayette Soule, the defendant's deputy, to whom the execution was enclosed, who testified

(all objection as to interest being waived) that he received the said execution enclosed in the letter, of which the foregoing is a copy, about the date of it, and that soon after the receipt of the execution, he went to Wilson's, but did not find him at home, but, upon inquiry, was informed that he was poor; that at this time the witness had the execution with him ; that he was again at Wilson's soon after that, and in the life time of the execution, and before the session of the supreme court at St. Albans, in January, 1838, but whether he had the execution with him, at that time, he could not say, and he then saw Wilson, and that he looked for property, but could find none, and was informed he had none, and that he did not think proper to commit him on the execution under the instructions he had received from the plaintiffs. That he had never communicated with the plaintiffs nor their attorney upon the subject of the execution and the letter of instructions, and that he never saw Wilson after that time ; that he was hired to the defendant, by the month, and boarded with him, and that all the papers were kept in the same desk, and that defendant knew what business he was doing, and that he generally told him what he had done. Defendant sent the execution to the justice.

It appeared that Wilson lived at Fairfax, a distance of about 14 miles from the defendant and the witness, Soule, and that he absconded about the 20th of January, A. D. 1838.

Other evidence was also given by the defendant tending to prove the property of Wilson at that time.

L. B. Hunt, on the part of the plaintiffs, testified in substance, that at the session of the supreme court at St. Albans, at the January term, 1838, he heard a conversation between the defendant and the plaintiffs' attorney in the suit against Wilson, in relation to the aforesaid execution, and said attorney then told defendant, that if he could get a good note for the plaintiffs' debt, payable in 6 or 12 months, he might take it, and that Wilson was not present at this conversation ; and that witness, soon after having learned that Wilson had run away, informed defendant of the fact, supposing he was liable for the execution, but defendant told witness he was not liable for it ; that he had never seen Wilson since the execution had been sent up, and that he had written instructions not

to commit him. The plaintiffs also gave evidence tending to prove the ability of Wilson to pay the execution; and there was no evidence in the case tending to prove that, after the conversation between the defendant and plaintiffs' attorney, at the session of the supreme court at St. Albans, in January 1838, either the defendant, or his deputy, Soule, had ever seen Wilson.

The court, in this case, after explaining to the jury the general principles in regard to the duties and liabilities of sheriffs, in such a manner as was satisfactory to the parties, proceeded to state to them that the important inquiry was, whether there was any thing in this case to take it out of the operation of the common principles applicable to sheriffs; and the jury were told that the conversation between plaintiffs' attorney and the defendant, as testified to by L. B. Hunt, would not, of itself, justify the defendant in not executing said execution, or in default thereof in not returning the same into the office of the justice from whom it issued in its life, with a return thereon of *non est inventus*, so as to charge bail on the back of the writ; except upon the condition that a good note was obtained according to the tenor and effect of the instructions given him.

The jury were further told that the letter, enclosing the execution to the deputy, was in some measure equivocal, and that if they found from the whole evidence that the defendant or his deputy Soule were induced to vary their course by means of the letter, and *to manage the execution in any way different* from what they otherwise would have done, relying upon the letter, and that, in consequence of it, they neglected to execute the execution when they had an opportunity, and the debtor afterwards absconded, so that it could not be executed nor returned *non est inventus*, the defendant would not be liable in this action; but if on the contrary neither the defendant nor his deputy were so induced, as above stated, not to execute the process by means of the letter, then the common principles, applicable to sheriffs, would apply to this case, and the defendants must be held liable. The jury were further told that if they found, from the whole evidence, that Soule, the deputy, had not, at any time after he received the execution, seen Wilson, so that he could return the execution *non est inventus* so as to charge the bail, it

CHITTENDEN,
January,
1842.

Strongs
v.
Bradley.

was his duty to so have done, and in that event, for this neglect the defendant was liable.

The jury were told that the fact, that Soule had not communicated with the plaintiffs or their attorney in relation to the execution on the subject of his instructions, could have no effect to prejudice the rights of the defendant in any way whatever, excepting as it might have a tendency to prove that Soule did not act under the letter of instructions in regard to the management of the execution relying upon the same ; and that only in this point of view could it be of any importance, and in this point they were authorized to consider it, and give it its proper weight.

The jury were also told that in case they returned a verdict for the plaintiffs, the rule of damages would be the plaintiff's debt against Wilson, and the interest on it after sixty days from the rendition of the judgment against Wilson. The jury returned a verdict for the plaintiffs, and the defendant excepted.

*Hyde & Peck,* for defendant.

There is error in the charge of the county court that, if the deputy was by the letter induced to vary his course, relying on the letter, and that, in consequence of it, he neglected to to levy the execution when he had an opportunity and that Wilson afterwards absconded so that it could not be levied nor returned *non est inventus,* the defendant was not liable, but if not so induced the defendant was liable.

1. This instruction lays out of the case all the other evidence tending to exonerate the defendant.

2. This letter authorized the deputy to omit to arrest the debtor or to return the execution *non est inventus.* This was decided in this case at the last term of this court. If the letter authorized the neglect, then, as matter of law, he was justified and the jury ought to have been so instructed ; and whether he so neglected, *"relying on the letter"* is an inquiry too refined for the court to entertain, more especially as the plaintiffs seek to charge the defendant for the neglect of his deputy. The intent with which a party does a legal or authorized act is not a subject of inquiry.

3. This instruction makes the letter no justification unless the deputy was ultimately prevented from executing the ex-

ecution by the debtor's absconding. So that if he relied on the letter, and was thereby induced not to commit the debtor at all, he was not justified unless the debtor absconded under such circumstances that the execution " *could not be executed nor returned non est inventus.*" If the letter justified a delay, it justified a neglect to arrest the debtor at all; at all events, it absolves the defendant from all liability for such neglect of the deputy.

4. The construction and legal effect of a written instrument, is matter of law for the court to decide, and the jury ought to have been told that the letter did authorize the deputy to neglect or delay arresting the debtor, instead of telling them that it "*was in some measure equivocal, and that if they found from the whole evidence*" &c. This instruction left it to the jury to decide whether the letter gave any authority to the deputy to deviate from his legal duty.

II. The court erred in charging the jury that the directions, given by the attorney, as proved by Hunt, did not justify the defendant in not executing the execution or returning it *non est inventus*, except upon condition that a good note was obtained. This was equivalent to telling the jury to lay this part of the evidence entirely out of the case.

The power given by the plaintiffs' attorney to defendant, to take a note with surety, implies an authority in defendant to give the debtor a reasonable time to procure it. The charge of the court makes it the duty of the defendant forthwith to arrest the debtor and take him by the nearest route to prison, unless he has a note with surety in his pocket ready to deliver.

In the exercise of the discretion vested in the defendant, by the attorney's direction, the defendant was authorized to delay, at least a reasonable time, the execution of the process, for the purpose of learning the particular circumstances of the debtor and the probability of obtaining such note at any time during the life of the execution, and to judge as to the most favorable time in the life of the execution to press the debtor for the requisite security. The delay may have been for the *bona fide* purpose of procuring the note and induced by the direction of the attorney. Any evidence of the acts of a creditor, which have the least tendency to show that the sheriff may have been induced to depart from his legal duty, ought to be left to the jury. The defendant was at least en-

titled to the same charge as given in relation to the letter.

III. The instruction to the jury, that if Soule had not seen the debtor he was liable for not making a *non est* return, is erroneous. Soule may have omitted to search for, and arrest the debtor, relying on the instructions of the plaintiffs, and for the purpose of communicating with the plaintiffs, after learning the poverty of the debtor, and yet the instructions of the court compel him, at the peril of an absolute liability for the debt, to return, *contrary to the truth and in fraud of the rights of the bail,* that he had made diligent search throughout his precinct and could not find the debtor. A creditor has no right to induce an officer to deviate from the duty imposed by law and then compel him to make a false return to charge bail. The morality of the law is of a higher character.

IV. The sheriff is responsible only for the official neglects of his deputy in the duties imposed by law. The delivery of the execution to the deputy, with discretionary power to deviate from his legal duty, absolves the sheriff from all liability, and his risk ought not to be enhanced by the hazardous inquiry whether the deputy deviated from his legal duty *by reason of the instructions.* If a creditor will tamper with a deputy and constitute him his agent, he is no longer the agent of the sheriff. Whether the deputy was paid by the month, or by legal fees, makes no difference; as it is a general principle, that the least interference, to vary the risk, discharges the bail or surety. The charge makes the defendant liable for the default of the deputy, whether he knew of, or assented to, his acting under the instructions or not, and makes the deputy's neglect to communicate with the plaintiffs (not an official act) evidence to charge the defendant. 4 T. R. 119; 1 Aik. 194; 12 Vt. R. 22; 7 Carville, 739; 15 Mass. 133; 4 Mass. 60; Watson, 38; L. L. 22; 1 Peake's Ev. 230; 1 Starkie's Ev. 2134, 1215; 33 Com. L. R. 184; 35 Com. L. R. 234; 18 Com. L. R. 177. *Porter* v. *Viner,* 18 Com. L. R. note.

V. The delivery of the execution to the deputy to *dun* the debtor, with directions "*to deviate from the straight forward course*" was not a delivery "*to execute according to law*" and does not support the declaration, and the court ought so to have instructed the jury.

*J. Maeck and D. A. Smalley*, for plaintiffs.

To excuse himself from liability the defendant relies, first, on the letter received from the plaintiff's attorney, enclosing the execution ; and

2. On the attorney's verbal conversation with him as proved by Mr. Hunt.

1. The defendant cannot complain of this instruction. His defence was that his conduct, in regard to the execution, was influenced by the letter. Could he so have satisfied the jury, he would have obtained the verdict, but their verdict falsifies his excuse.

2. The court properly instructed the jury that the conversation between plaintiffs' attorney and defendant would not excuse the defendant from executing the execution, only on condition that the note was procured. Had the defendant afterwards seen the execution debtor, and given him time to procure a note and he then had absconded without procuring it, the case would have merited a different consideration. But it will be observed the case shows that, after this conversation, neither the defendant nor his deputy saw Wilson. If the defendant then had already seen Wilson, that conversation would not screen him from his liability, if he afterwards absconded ; and if he had not previously seen him on the execution, he lawfully could and it was his duty to have returned it *non est inventus*.

3. The instructions, as to the effect of defendant not replying to the letter, were as favorable to the the defendant as the law would warrant and were in accordance with defendant's request.

The opinion of the court was delivered by

REDFIELD, J.—1. We think the court erred in instructing the jury, that the letter, written by plaintiffs' attorney to the defendent's deputy, was " equivocal." We think it did give the officer an unlimited discretion, in the management of the collection of the execution, adding, indeed the request that if it became necessary, in the opinion of the officer, " to pursue any other course than the straight forward one," they would wish to be informed ; and all this, when no discretion, whatever, was intrusted to the officer ! We cannot think this the fair construction of the letter. And the jury

should have been told, that it did vest in the officer an unlimited discretion to pursue such a course as he deemed for the interest of the plaintiffs. His omission to inform plaintiffs' attorney of his proceedings, from time to time, as requested, might be important in determining how far the officer faithfully executed the trust reposed in him.

2. We think the court erred in not instructing the jury that the defendant was no way liable for the manner in which his deputy executed a discretion, intrusted to him by the creditor in the execution. If the creditor obtain from the sheriff the appointment of a special deputy, for the purpose of collecting his execution, there is no liability, on the part of the sheriff, for any default of such deputy. He is the agent of the party, and himself alone liable for such degree of diligence as the particular nature of his retainer requires. So, too, by the English decisions, if the party select a particular deputy, who acts under his instructions, he thus makes him, *pro hac vice*, a special deputy. *Ford* v. *Leche*, 33 C. L. 184, and cases there cited. *Doe* v. *Trye*, 35 C. L. 234. *Porter* v. *Viner*, 18 Com. L. 177, *in notis*.

We intimated last term, in this same case, that we were strongly inclined to adopt this view of the law, as being applicable to the subject of sheriffs' liability in this state. The further discussion and consideration of the subject has but served to confirm this impression. If a discretion is intrusted to the deputy, under which he proceeds to act, we cannot consider the sheriff liable for any of his acts, or omissions, within the legitimate range of that discretion.

The discretion in this case was unlimited. Whatever, then, the officer did, should be referred to that discretion, unless indeed it could be shown that the officer did not act under his instructions, which could only be done by positive proof, showing that he was not, in any manner or degree whatever, influenced by such instructions. For although he might have been mainly influenced by other considerations, yet if he was in any degree influenced by these special instructions, the defendant is exonerated from all liability, on account of his conduct. We see no testimony in the case tending to show he was not influenced by these instructions. And the burden of showing this rests with the plaintiff, for the instructions are admitted. And now unless some irre-

fragable evidence is introduced, to show that the officers acts, which are fairly referrable to the instructions, did not in any degree proceed from them, nor were influenced by them, they should be referred to such instructions. If the creditors will give special instructions to the deputy, and it is doubtful how far they may have influenced his conduct, these doubts should be solved against the party raising them. It is incumbent on him to show that he has not himself misled the sheriff's officer. And in a case like the present, it is not to be left to the jury to make some kind of mental inference that the officer did not act under these instructions, when his acts are fairly referrable to that cause, and there is no proof that they proceeded from any other source. In ordinary cases, where one has authority to do an act, and does the act, it is, by necessary intendment of law, referred to such authority. Hence the clause, in the plea in bar of justification under process, *virtute cujus* is not traversable even. I understand, too, by the English practice, the same rule extends to the present case. If the authority will cover the act, or omission of the officer, the sheriff is not, and cannot be made liable, by proof that the officer did not act under the authority. I, for one, should be well enough satisfied with that rule, in the present case; and in practice I do not consider the one here laid down very different from that. In abstract principle the rule here laid down is not merely right; but is, so far as the court can perceive, absolute. moral justice, to both parties. My only apprehension is, that, in practice, it will be found rather too much refined for ready and sure application. But, with the limitations above, we do not well see how it can mislead or confuse the least experienced in technical distinctions. But, surely, it should not be referred to the jury, in a case like the present, to determine whether the officer did in fact act under his instructions or not. They might give the case to the plaintiffs because the officer was himself bail on the *mesne* process; or because he did not write the plaintiffs' attorney, or possibly, because the defendant hired him by the month. It is obvious none of these grounds would be sufficient. The fact of the officer being himself bail, would be a reason why he would commit the debtor immediately, if he did not intend to proceed under the instructions. His not writing plaintiffs' attorney would show nothing more

than a want of diligence in executing a special authority, for which we have seen the defendant cannot be held responsible, and the terms upon which the deputy was employed could hardly effect the extent of the sheriff's liability for his acts. If the instructions are given to the officer, who is himself liable for his own acts, and he does not pursue them with proper diligence, very likely he might be liable for general official neglect; but this is not the case, when another is liable for the acts of such officer.

The charge of the court to the jury, in regard to the duty of the officer to return the execution *non est inventus*, was, we think, erroneous. The jury were told that if the officer had not seen the debtor before he absconded, so that he could, consistently with the facts, have returned the execution *non est inventus*, it was his duty to have done so. Now it could hardly be said that the deputy, being himself bail, would be under any greater obligation to make such return than if some other one had been bail. And in this latter case, if the officer, but for the instructions, would have arrested the debtor, but under them, finding upon proper inquiry, that he was destitute of all means, did not therefore go to see him, even, until he learned he had absconded he could not then, consistently with good faith, make a *non est inventus* return. So that, upon this point, the defendant could not be liable, except under the same limitations as in the former, i. e. that it should be substantially and fully shown that these instructions did in no sense induce the deputy to pursue a different course, in that respect, from what he otherwise would have done.

Judgment reversed and new trial.