Mason v. Ide.

JOHN W. MASON *v.* GEORGE IDE.

*Sheriff. His liability for the acts and neglects of his deputy.*

A sheriff is liable for all the acts and neglects of his deputy in performing the duties imposed on him by law. To exonerate him from this liability, the creditor in the execution must do some act which releases the deputy from doing his legal duty.

The plaintiff placed an execution in the hands of a deputy sheriff for collection. At the request of the debtor the deputy sent a message to the plaintiff inquiring if he would take the note of one D. for the amount of the execution. The plaintiff sent word back to the deputy that he might take the negotiable note of D., or of any good man, for the amount of the damages but that the costs must be paid. The deputy, after receiving this message, took D.'s non-negotiable note for the amount of both damages and costs, and sent it to the plaintiff, who refused to receive it, because it was not such a note as he had authorized the deputy to take. The deputy did nothing more to collect the execution and it expired in his hands uncollected; *Held,* that the deputy had violated his official duty and that the sheriff was liable to the plaintiff therefor.

Case against the defendant, as sheriff of Caledonia county, for the default of his deputy, Charles S. Martin, in not collecting an execution in the plaintiff's favor, against one David Eldridge. Plea, the general issue and trial by jury at the June Term, 1857,— POLAND, J., presiding.

The facts of the case are stated in the opinion of the court.

The county court directed a verdict for the plaintiff for the amount of his execution against Eldridge, and interest, to which the defendant excepted.

*Peck & Colby,* for the defendant.

*Slade & Edwards* and *Child & Powers,* for the plaintiff.

The opinion of the court was delivered by

ALDIS, J. The defendant was a sheriff of Caledonia county. The plaintiff delivered a certified execution in his favor against one Eldridge, to Charles S. Martin, one of the defendant's deputies, to collect. The plaintiff resided in Craftsbury, and Eldridge and Martin in Danville. Eldridge agreed with Bliss N. Davis, Esq.,

of Danville, to give his note for the amount of the execution, and informed Martin of such agreement, and at the request of Eldridge, Martin sent a message by the stage-driver, to the plaintiff, asking him if he would take Davis' note for the amount of the execution. In reply, the plaintiff told the driver to tell Martin "that he might take a negotiable note of Mr. Davis, or any good man, for the amount of the damages, but the costs must be paid." The driver communicated this reply to Martin. Martin took a note not negotiable for the amount of both damages and costs, and sent it to the plaintiff, who refused to receive it, and sent it back, alleging it was not such a note as he had authorized Martin to take. After this, Martin did nothing more to collect the execution, and it expired in his hands uncollected. It appeared that Davis had an account against the plaintiff, the validity of which the latter denied, and that on this account he refused to take Davis' note, unless made negotiable. Upon these facts the court directed a verdict for the plaintiff, to which the defendant excepted.

The defendant insists that the driver told Martin that Mason said he might take Davis' note without adding the qualification "negotiable," and that it should have been left for the jury to say what direction was delivered by the driver; but the case states and the minutes of the judge show, that the driver "told Martin just what Mason said to him." It is true that in the preceding sentence of his testimony he omitted to use the word "negotiable;" yet the whole testimony, taken together, does not tend to show any message delivered to the deputy other than the very one the driver received from the plaintiff. As the court, considering the evidence in its aspect the most favorable to the defendant, could not legally find any that tended to support the defence, it might well proceed to treat the facts as settled, and to instruct the jury as to their legal result.

The important question in the case is as to the effect of the plaintiff's answer to Martin's inquiry upon the sheriff's liability for Martin's default. The defendant claims that this answer was such an interference, by the plaintiff, with the duty of the deputy, to proceed with the execution according to law, as exonerates the sheriff from liability for the deputy's default.

The sheriff is liable for all the acts and neglects of his deputy,

Mason *v.* Ide.

in performing the duties imposed on him by law. To exonerate the sheriff from such liability, the creditor in the execution must do some act which releases the deputy from doing his legal duty. Thus, in *Strongs* v. *Bradley*, 14 Vt. 55, the creditors wrote a letter to the deputy which vested in him an unlimited discretion to pursue such a course as he deemed for the interest of the creditor, and so released him from pursuing the legal course. That case has established the principle that " if a discretion is intrusted by the creditor to the deputy, under which he proceeds to act, the sheriff is not liable for any of his acts or omissions within the legitimate range of that discretion." Applying the principle of that case to the facts of this, we should consider whether Martin was entrusted with any such discretion under which he proceeded to act. The reply Mason sent to him points to two courses of action, viz: first, he might take *Davis'* negotiable note ; second, he might take " *any good man's*" negotiable note. The last course clearly left it to his discretion to decide who was a good man within the meaning of the instructions. If acting under this branch of the message, Martin had taken the negotiable note of a man who was irresponsible, and insolvent, he was acting under the authority derived from Mason, and not in the execution of duties imposed on him by law ; and for his acts within the legitimate range of his discretion, exercised under such authority, or for his omission to collect the execution, in consequence of his action under such authority, the sheriff would not be liable. But it appears from the case he did not attempt to so exercise his discretion. He limited his action to the other branch of his instructions, viz : to take the negotiable note of Bliss N. Davis. Now here there was nothing left to his discretion. His duty was plainly and precisely laid down ; the extent of his authority clearly defined. The direction of Mason was substantially this : you must proceed with the execution according to law, unless the debtor pays you the costs and furnishes you with the negotiable note of Davis, for the damages. If the debtor do so, you *may* stop the execution, but are not bound to do so. It did not suspend the collection of the execution by legal process for an instant of time, in order to see if such an arrangement could be perfected. It was not even a request or suggestion emanating from the creditor, and which moved the deputy to attempt to secure such an

arrangement. It was simply the consent of the creditor to suspend the collection of the execution, by due course of law, upon the performance of a specific act by the debtor; but, until such act was performed, the deputy was to proceed in doing the duties imposed on him by law. The deputy was not the agent of the creditor to procure such note. He was only authorized to receive such note in payment of the damages in the execution. He was rather acting at the request and for the benefit of the debtor than of the creditor.

In such case there seems no good reason why, if he omit his legal duty, without securing the performance of the specific terms upon which he is authorized to omit it, he should not bind both himself and his principal (the sheriff) by his default. In such case no exercise of control, no interference, no act procuring delay or inducing the deputy to omit his duty, was fairly imputable to the creditor. On the contrary, it is obvious that all parties understood that a strict compliance with the specific terms imposed by the creditor, a literal performance of the very act required by him, was an indispensable condition precedent to the suspension of the proceedings upon the execution.

Such transactions between the officer and the creditor, as they vest no discretion in the officer, as they do not suspend the due course of proceedings upon the execution till the performance of the specific condition, are clearly distinguishable, in principle, from the case of *Strongs* v. *Bradley.* Nor can it be urged that such precise and limited authority for the performance of a specific act may mislead the deputy. He is bound to the exercise of reasonable judgment and diligence in the construction of such instructions, and in the performance of his duties under them; and the sheriff is bound to appoint officers competent to exercise such judgment and diligence. If they fail to do so, they fail in discharging the duties imposed on them. They are bound to take the usual course with the execution until the act is done which authorizes them to suspend proceeding under the execution; if they suspend before such act is done, or when some other unauthorized act is done, they are delinquent in official duty. They are not bound to deviate from the line of legal process in such cases; they *may*, and if they have the slightest doubt as to their own safety in the matter

they may refuse to do so, and the creditor can make no complaint. In this case Martin might have refused to take Davis' negotiable note, and the plaintiff could not have complained of any want of diligence, or of any neglect. In this case, therefore, we conclude, that after the receipt of the plaintiff's reply to the inquiry sent by the stage-driver, the act of the deputy, in taking a note not negotiable, for the whole amount of the execution, and without payment of costs, and thereupon stopping further proceedings was clearly a violation of his official duty.

The judgment of the county court is affirmed.