Skouten v. Wood.

LUCINDA SKOUTEN AND JOSHUA SKOUTEN, Defendants in Error, *vs.* MARY WOOD, Plaintiff in Error.

1. *Homestead—Estate of widow a fee simple—Law as to inheritance of—Statute of sister States—Construction of.*—It is a well settled practice to construe foreign laws, as the courts of the country where they originated have construed them, and where such laws, whether of a foreign country or of a sister State, are adopted here and made a part of our code, the presumption is that they are adopted with the construction already given by the foreign courts or sister State, where they had their origin. Hence, as the homestead law is a literal copy of a Vermont statute and the 5th section (Wagn. Stat., 698,) has been construed by the Supreme Court of Vermont, *Held,* in accordance with such Vermont decision, that under said section 1, where the husband dies, seized of a fee in the homestead, the wife has not merely a life estate, but a fee simple absolute therein, and on her death it goes to her heirs lineal or collateral, to the exclusion of the husband's heirs.

The court inclined to the opinion that where there were minor children of the husband by a former marriage, and the widow died before their majority, the title would go to them until they came of age, and then to the heirs of the deceased husband.

*Error to Buchanan Circuit Court.*

*Thomas & Tyler,* for Plaintiff in Error.

I. Wood, at the time of his death, held the homestead in fee simple absolute, and under the homestead act properly construed (Wagn. Stat., 698, § 5,) the widow held it by the same title.

*H. M. Ramey,* for Defendants in Error.

I. The statute in relation to the exemption of homesteads, was only intended to operate as a protection against creditors in attachments or executions, and not to defeat the interest of the heirs. (Wagn. Stat., 697, § 1.)

II. We have a statute governing the manner of the descent and distribution of the estate of intestates. (Wagn. Stat., 529, § 1). To give the construction to the homestead act, contended for by the plaintiff in error, would render the statute concerning assignment of dower and the distribution of estates nugatory, and operate as a repeal of them.

NAPTON, Judge, delivered the opinion of the court.

Under the 5th section of the act concerning homesteads (Wagn. Stat., p. 698), the defendant, who was the widow of Bird Wood, had been allowed as a homestead 120 acres of the estate of her deceased husband.

The deceased left no minor children; but had several children by a former wife, who were of age and married. The plaintiff is a daughter of Wood, and wife of Skouten, and filed in the Circuit Court a petition to enjoin the defendant from wasting the timber on the said 120 acres. A temporary injunction was granted and ultimately this injunction was made final.

The propriety of this action of course depends on the question whether the homestead of the wife, assigned to her by the Probate Court, was a life estate, or a fee simple. The husband died seized of a fee simple estate and the question depends on the proper construction of the 5th section of the homestead law.

That section reads thus: "If any housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid ($1,500,) shall pass to and vest in such widow or children, or if there be both, to such widow and children, without being subject to the payment of the debts of the deceased, unless legally charged therein (thereon) in his lifetime; and such widow and children, respectively, shall take the same estate therein of which the deceased died seized, provided, that such children shall, by force of this chapter, only have an interest in such homestead until they shall attain their majority: and the Probate Court having the jurisdiction of the estate of such deceased housekeeper or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto."

This act concerning homesteads is a literal copy of the Vermont statute on this subject (See Stat. of Vermont, p. 456). There are sections of the Vermont statute omitted, but the 5th section of our act is an exact copy, with a mere

verbal alteration, evidently occasioned by the blunder of the copyist or printer.

In construing a legislative enactment of another State, or of a foreign country, it is a well settled practice of all courts to adopt the interpretation of the law which the highest judicial tribunals of such State or foreign country have given to it, and this practice is based on the presumption that the judicial branch of the government whose legislative branch passed a law, is the most competent to determine the meaning and effect of such law; and, when such law comes up before a foreign tribunal, the construction given to it by the judiciary of the State where it originated, is held to be conclusive in the foreign tribunal. Hence the federal courts of this country have always held that the construction of State laws by the State judiciary, was binding on them; at least, that was the rule from the origin of the federal government until very recently, and citation of authorities to that effect is unnecessary.

And so, if a law of France or England, is in question, our judicial tribunals adopt the construction of such law as it has been authoritively announced by the judicial tribunals of France or England.

And I do not know that there is any difference between a law of a foreign country or a sister State, when brought collaterally under review in a court of this State, and such law after it has been adopted and made a part of our State law. In the latter, as well as in the former case, the construction of the act given by the courts of the State or country in which it originated, would be very pursuasive if not conclusive evidence, that our legislature in adopting it, meant to adopt it as construed by the judicial authorities of the State where it originated. Hence the statute of limitations of England, and the statute of frauds, when adopted here have always received the construction which the courts of England placed on them, unless their terms were varied by some legislative enactment here. And this interpretation proceeded on the assumption that our legislature in adopting them, intended

that they should be construed here, as they were in the country where they originated.

And so, when our legislature copies and adopts a Vermont statute, we must assume that they understood the interpretation of it as given by the courts of Vermont; and intended the law to be construed here as the courts of Vermont construed it.

The homestead law, though aiming at the same general object, has varied very much in the several States that have adopted one, as may be seen by reference to the chapter in Mr. Washburn's book on this subject; and the construction given to the various laws on the subject, has been essentially variant.

Our statute on the subject is simply a re-enactment of the Vermont statute, and it is presumed that the construction given by the Supreme Court of Vermont, to their statute, was intended to be the law here.

The 5th section of our law is a precise copy of the 5th section of the Vermont law.

We have therefore examined the Vermont cases to see what construction has been given to that section. Were it an open question I should, for myself, hesitate to declare the widow's title under this section to be an absolute one, seeing that a life estate would accomplish all the objects sought by the spirit and intent of such laws. But an examination of the Vermont cases shows that the Supreme Court of that State, has determined that a fee simple passes to the widow, where the husband dies seized of a fee. (Day vs. Adams, 42 Vermont, 316; 28 Vt., 541 and 672; 30 Vt., 698, 759; 33 Vt., 649; 33 Vt., 290; 36 Vt., 257; 39 Vt., 578.) The sum of the opinions is that "the widow and children take an absolute title at the death of the father;" and it follows, that so far as homesteads are concerned, the statute of descents and distributions is repealed.

There are difficulties attending this construction of the act; but the facts of this case do not present them. There are no minor children here, and the widow takes the estate absolute-

ly; and on her death it goes to her heirs, lineal or collateral, to the exclusion of the husband's heirs,—a seeming injustice, but one with which we have no concern. The law declares her title to be the same as her husband had, and as he had a fee simple, she enjoys the same and can dispose of it as she pleases; and, on her death without such disposition, it would necessarily go to her heirs, to the exclusion of her husband's children, who were at maturity at his death.

Supposing her death to occur before the minor children (where there are any) attain maturity, it would be a serious question as to where the title goes; but I suppose it would go to the surviving minor children and on their majority, to the heirs of the deceased.

However this may be, as the widow in this case took a fee, there was no ground for an injunction by the heirs of the husband; and as the statute declares she shall take a fee where her husband had one, we have nothing to do but to enforce it, whatever we may think of its policy.

The Circuit Court erred therefore in granting any injunction; and its judgment is reversed. The other judges concur.