JOSEPH W. HOWES *v.* SAMUEL S. SPICER.

*Attachment. Neglect to return property attached. Representations by attaching officer to creditor. Effect of review upon nominal bail. Refusal of creditor to receive receipt.*

When a constable, having a writ of attachment for service, takes a receipt for attachable personal property in the possession of the debtor, it constitutes a sufficient attachment of the property to hold the receiptor; and if the constable neglect to make a proper return of the attachment upon the writ, he is liable in an action on the case for the neglect.

And if the constable, in such case, not being misled by any instructions from the plaintiff, or his attorney, represent to the plaintiff, that he had made a valid attachment, and thereby induce the plaintiff to rely upon it and forego making any farther attachment, which he might then have done, the constable is bound

Howes *v.* Spicer.

by such representation, and is estopped from showing, that in fact he made no legal attachment.

And if the suit be reviewed upon nominal bail, by the consent of the plaintiff, it will not affect the liability of the constable. The creditor is not bound to exact bail for the benefit of the receiptor.

Nor is the liability of the constable, in such case, affected by the fact, that the creditor refused to receive the receipt, taken by the constable, and prosecute it at his own risk.

TRESPASS ON THE CASE. In the first count in the declaration the plaintiff alleged, that he sued out a writ in his favor against Joseph Fish and Thomas Cahill, returnable to the county court, and directed to any sheriff or constable, and delivered it, March 19, 1847, to the defendant, who was then constable of Waterbury, to serve and return, and directed him to attach thereon fifty kegs of powder, one grey horse, twenty carts and twenty harnesses; that the defendant neglected and refused to attach all, except nine kegs of powder; that the plaintiff recovered judgment, November Term, 1847, against the debtors, for $115,76 damages, and $23,46 costs, and took out a writ of execution, and delivered it, Dec. 25, 1847, to the defendant; and that the debtors had then become insolvent, and the constable returned the execution unsatisfied for $123,00, and so the debt was lost. In the second count it was alleged, after reciting the proceedings as in the first count, that the defendant did attach fifty kegs of powder, but made no return of the attachment, and neglected to sell the property upon the execution. In the third count it was alleged, that the defendant did not keep what he did attach, but that he procured nine kegs of powder, other than those which he attached, and sold them upon the execution. Plea, the general issue, and trial by the jury, November Term, 1849,—REDFIELD, J., presiding.

On trial the plaintiff gave in evidence the original writ of attachment in his favor against Fisk and Cahill, upon which the defendant had returned nine kegs of powder, as attached by him, and twenty seven kegs as attached in Middlesex. It was conceded, that the defendant was constable of Waterbury, and that the plaintiff recovered judgment against Fisk and Cahill, as alleged in his declaration. The plaintiff also gave in evidence the execution, de-

scribed in his declaration, which was dated December 8, 1847, and received by the defendant, as constable, December 25, 1847, and returned Feb. 4, 1848, and on which there were sold by the defendant, January 31, 1848, nine kegs of powder, leaving the execution unsatisfied for $123,40.

The plaintiff called Paul Dillingham as a witness, who testified, that he made the writ, as attorney for the plaintiff, and delivered it to the defendant for service; that the defendant came to the office of the witness, where the plaintiff and witness then were, and was told by them, that they supposed Cahill had a large quantity of powder on the works, and carts, harnesses and teams, and that they wished to secure the debt, and preferred to take powder, if it could be found; that Cahill's section of the rail road, which he was constructing, extended, in Waterbury, to the line of Middlesex and a short distance into the town of Middlesex; that they told the defendant to go up that night and get what he could; that the grey horse was described to him, and also the horses and carts, if the other property should be insufficient; that the witness told him, he would turn out horses and carts, if necessary; that property, to the amount of $300,00 more than the amount required, could then have been secured; that the next morning the witness saw Spicer at the office, and inquired what he had done, and the defendant told him, that he did not find all the powder the night before, but that Cahill had turned out fifty kegs that morning and wished it receipted; that the defendant then asked the witness, whether one Goss was good, and he replied, that he thought he was, and told the defendant, *that he* wished him to do the business, so that *there would* be no mistake, and asked him, if he knew Cahill had the powder, to which the defendant replied, that there was no doubt, and that they estimated the value of the fifty kegs, and found that it would be sufficient, and the witness told him, that he would have no responsibility about it, except that, if Cahill had the fifty kegs of powder, he, the witness, would say, that Goss was good enough as receiptor and would not direct any attachment; that the witness never saw the receipt until December, when the defendant showed it to him; that it was a receipt for fifty kegs of powder, valued at $150,00, and was signed by Cahill and Goss; that the witness then made a writ for the defendant upon the receipt, and the defendant took the writ and receipt, say-

Howes *v.* Spicer.

ing that he was going to make a demand; that the witness heard nothing more about it for two weeks, when the defendant came to his office, and said that Goss had told him, that he had not made return of the fifty kegs of powder upon the writ, but had returned some, and some as being attached in Middlesex, and that he, defendant, had been to Montpelier and examined his return and found it as Goss said, and that Goss had given him a bond of indemnity, and that he, defendant, was going to sell nine kegs of powder upon the execution, but not the same he had attached, and directed the witness not to proceed with the suit upon the receipt; and that the defendant did sell the nine kegs of powder. On cross examination the witness testified, that the plaintiff said nothing more to the defendant about the property, than that he wished powder attached in preference to teams; that at the time the defendant said he had been to Montpelier and exmined his return, he asked the witness, if he would take the receipt and prosecute it at the plaintiff's risk and discharge the defendant; that the witness declined doing so, and the defendant said, the other party would and he should prefer that; that Cahill failed the next July, and had the grey horse, and property sufficient to secure the debt, until he failed. On re-examination the witness said, that he told the defendant not to make any fictitious attachment, or receipt, or any attachment of property, unless the debtor had it. The plaintiff also called one Moody as a witness, whose testimony tended to prove, that the plaintiff gave no specific directions to the defendant, except to secure the debt, and that Cahill was possessed of property, until he failed, which was the next summer.

The defendant called William Spicer as a witness, whose testimony tended to prove, that the defendant received directions from the plaintiff to attach fifty kegs of powder, that had come that day; that defendant asked, if he should attach any other property, and the plaintiff replied, " No,—he had understood there was no other property, that was attachable;" that this conversation was at a different place from that testified to by Dillingham; that the witness went with the defendant, and the defendant attached nine kegs of powder in Waterbury and twenty seven kegs in Middlesex, and removed the whole across the river into Moretown; and that the witness understood, that there were some fifty kegs of powder in all,

in the powder house. The defendant also called one Scagel as a witness, whose testimony tended to prove, that Cahill had executed a bill of sale, to Goss, of the grey horse, and the other horses, harnesses and carts, in November, 1846, and that they were the property of Goss;—but upon this point the rebutting evidence tended to prove, that this property was ultimately attached and held, by Cahill's creditors, as his property. It appeared, that the suit in favor of the plaintiff against Fisk and Cahill was entered in court at the May Term, 1847, and judgment rendered for the plaintiff, and the defendants in that suit entered a review, and a recognizance, in the sum of $10,00, was entered for the review.

The court intimated to the counsel, that if the testimony on the part of the plaintiff gained full credit, the defendant was liable for the fifty kegs of powder, or their value, provided the jury were satisfied, that the plaintiff might have secured his debt upon the attachable property of Cahill, had he not been informed, that it was already secured by the attachment of those fifty kegs of powder; that the fact, that the defendant took some of the powder in Middlesex, where by law he had no authority to make such attachment, would make no difference, if that were done by the mistake of the defendant and not made known to the plaintiff; that when the defendant informed the plaintiff's attorney, that he had attached fifty kegs of powder on this debt, the attorney had a right to understand, that he had legally attached them, unless he were informed of the mode of attachment, or either he, or the plaintiff, had done or said something to lead the defendant into the mistake; that if the plaintiff's attorney did understand it to be an attachment made in the town of Waterbury, the defendant was liable to that extent; and that, even if some part of the fifty kegs of powder was in Middlesex, at the time of the attachment, where the defendant could not have attached it, it was his duty not to attempt it, but to inform the plaintiff and let him take other means to secure it, or to secure other property upon his debt.

Upon this intimation the defendant submitted to a verdict for the agreed value of the fifty kegs of powder at the time of the demand, and the interest since, with leave to except; and for that purpose exceptions were allowed.

*O. H. Smith* for defendant.

It was shown by the testimony of William Spicer, that the plaintiff directed the defendant to attach fifty kegs of powder, and not to attach any other property. .We insist, that the positive directions of the plaintiff were paramount to the hypothetical directions of the plaintiff's attorney, and the defendant would be justified in following the plaintiff's directions. Any directions given by the plaintiff to the officer, controlling those contained in the writ, will exonerate the officer from the charge of official neglect, provided he follows the plaintiff's directions, as far as he has the ability and authority so to do. The plaintiff need not give any advice, or directions; but if he do interfere, he cannot recover against the officer for any loss, which might result from following his advice. *Donham* v. *Wild*, 19 Pick. 520. *Mickles* v. *Hart*, 1 Denio 548. *Kimball* v. *Perry*, 15 Vt. 414. It was incumbent upon the plaintiff to show by positive proof, that the officer was not in any manner, or degree, influenced by his instructions not to attach other property. *Strong* v. *Bradley*, 14 Vt. 55. If the officer did his duty according to his best discretion, without fraud, he is not to be punished for a mistake. *Canada* v. *Southwick*, 16 Pick. 556.

It appears, that the plaintiff might have obtained his pay, if he had not consented to a review on nominal bail. It is well settled, that if any injury was occasioned wholly or in part by the negligence of the party himself, he cannot recover. *Clark* v. *Smith*, 10 Conn. 1. *Noyes* v. *Morristown*, 1 Vt. 353. *Briggs* v. *Guilford*, 8 Vt. 264.

The charge was incorrect in relation to the plaintiff's testimony, there being other testimony and other points in the case. *Lindsay* v. *Lindsay*, 11 Vt. 621. *Vaughn* v. *Porter*, 16 Vt. 266.

It does not appear, that there was any other powder in Waterbury, belonging to Cahill, or Fisk, except the nine kegs, which were attached. The defendant having offered to the plaintiff the benefit of the receipt of Goss, which the plaintiff declined, he is not at liberty now to claim any thing, on account of the receipt being surrendered, except as to the nine kegs.

*P. Dillingham* and *T. P. Redfield* for plaintiff.

The defendant is liable at least for the value of the fifty kegs of powder. The powder was "turned out to him," and a receipt was

taken, which was satisfactory to the plaintiff.` The receiptor is liable for the value of the property; he cannot excuse himself by saying, that the property was valueless, or that it had no existence. *Parsons* v. *Strong*, 13 Vt. 235. *Allen* v. *Carty*, 19 Vt. 65. *Allen* v. *Butler*, 9 Vt. 122. *Spencer* v. *Williams*, 2 Vt. 209. *Lowry* v. *Cady*, 4 Vt. 504. If the debtor procured a good receipt for property at Waterbury, it is no defence for him, or for the receiptor, to say that the property was in fact without the jurisdiction of the officer.

But if we concede, that the defendant made the attachment without his jurisdiction, and acquired no lien upon the property, yet the consequences of his ignorance of duty are not to be visited upon the plaintiff. Relying upon the assurances made to him by the defendant, the plaintiff's attorney omitted the farther attachment of property, which was within the jurisdiction of the officer. If the powder was not within his precinct, it was his duty to proceed and attach other property, which the plaintiff's attorney was ready to turn out to him.

The opinion of the court was delivered by

REDFIELD, J. We think, in this case, that the defendant did make a sufficient attachment of the fifty kegs of powder, to hold the receiptman, if he had only made proper return of such attachment on his writ. The receiptman and the defendant are estopped, by the receipt, from denying the attachment of the property, within the precinct of the officer. All, then, that was wanting, to perfect the plaintiff's security, was a proper return by the defendant. This he omitted to do, and he is therefore liable, upon the most common and obvious principles of law applicable to the subject. In regard to this portion of the case, there is no claim, that the plaintiff's instructions to the defendant had any tendency to mislead him,—which is the rule adopted in *Strong* v. *Bradley*, in regard to special instructions given to a *deputy* sheriff in regard to the collection of an execution, where the suit is against the sheriff for the default of the deputy. In such case the rule is, from policy, more strict, than where the instructions are given to the principal, as in the present case. In such cases all that is required is, that the jury should find, by a balance of evidence, that the instructions given did not in fact

mislead the party. This, then, will entitle the plaintiff to recover for the value of the fifty kegs. And as the execution exceeds that amount, and no question necessarily arises here in regard to the nine kegs, sold on the execution, that not forming any portion of the same powder attached, it does not become necessary to examine the case farther.

But we are well agreed, that even if the defendant had not in fact made any such attachment as could have been enforced, yet having acted on his own responsibility, and not being misled by any instructions of the plaintiff, or his attorney, as the case requires the jury to find, and having represented to the plaintiff, that he had made a valid attachment, and thereby induced the plaintiff to rely upon it and forego making any farther attachment, which he might then have done, the defendant is bound by his representation to the plaintiff's attorney, and is estopped from showing, that in fact he made no legal attachment. He took upon himself to judge of the sufficiency of the attachment, and after being very strictly cautioned by the plaintiff not to rest upon uncertainties. He ought not therefore to expect now to visit the consequences of his own mistake upon the plaintiff.

The review of the case, by consent of the plaintiff, on nominal bail, if shown in the case, is no more than the court would have ordered. And the creditor is not bound to exact bail for the security of the receiptman, or to resort to bail, already in, for that purpose. At law he may elect his remedy.

The creditor was not bound to take any receipt at his own risk, and much less one, where the very attachment receipted was not returned on the writ.                    Judgment affirmed.