THE BANK OF MIDDLEBURY v. THE TOWN OF RUTLAND.

*Replevin. Officer. Towns. Attorney. Evidence.*

An officer who serves a replevin writ in behalf of a defendant to recover possession of property attached, is bound to take sureties on the replevin bond who are at the time *actually* responsible for its amount. It is not enough that they are, at the time the bond is taken, in good credit and *apparently* responsible; but, on the other hand, he is not liable if, being actually responsible when taken, they cease to be so before the bond is put in suit.

The default or neglect in taking such a replevin bond, which makes a constable liable, is the criterion also of the liability of the town for him.

The fact that the attorney of the plaintiff in the original suit acts also as the attorney of the defendant in making the replevin writ for the property attached, and draws up and consents to the bond taken by the officer serving the replevin writ, does not necessarily discharge the latter from liability for the insufficiency of the bond. To have this effect, first, the officer must be aware that the attorney of the plaintiff was the attorney in the original suit; and secondly, such attorney must either act in behalf of the plaintiff in consenting to the bond, or give the officer good reason to believe that he consents to it in their behalf.

An ancient deed or record proves of itself no title in the grantee. Such proof must be accompanied with evidence of possession corresponding with the deed, or of title in the grantor.

The opinion of a witness as to the future net profits of a railroad company is not competent evidence to show its actual pecuniary responsibility five years before.

In order to show one's actual pecuniary responsibility, it is competent to prove his general reputation in that respect at the time in question.

The opinion of a witness as to a man's pecuniary responsibility who is acquainted with the state and value of such person's property, and who has already testified as to all the facts which he knows upon the subject, may or may not be admitted in evidence at the discretion of the court.

Case, for the alleged neglect or default of the second constable of the defendant town for taking an insufficient replevin bond. Plea, the general issue, and trial by jury, at the June Term, 1859, in Addison county,—BENNETT, J., presiding.

The plaintiffs introduced evidence to show that they commenced a suit in their favor, on the 21st of November, 1853, against the Rutland & Washington railroad company, and attached as their property thereon, four locomotives, the value of which was more than sufficient to pay their demand, and that they obtained a judgment thereon; that execution was regularly issued thereon, and put into the hands of the sheriff, who made the attachment in season to charge the property attached in execution, who in due season demanded payment of the same, and in default thereof, demanded the property of the railroad company, and also of George W. Strong, one of the signers of the replevin bond hereinafter described, to sell on said execution, but that the execution was not paid, nor was said property returned to him, and that the execution was within its life duly returned to the clerk of the court from which it issued, wholly unsatisfied, and with a *nulla bona* return thereon endorsed.

The plaintiffs also introduced in evidence a replevin writ issued and dated the 16th day of May, A. D. 1854, prayed out by the Rutland & Washington railroad company, directed to any sheriff or constable in the State, requiring such officer to replevy the aforesaid four locomotives attached on the writ of the plaintiffs against the railroad company, and also introduced in evidence a replevin bond of the same date, executed to the plaintiffs, in the penal sum of fifteen thousand dollars, conditioned in the form . prescribed by law, which replevin bond was signed by said railroad company, by its president, and by George W. Strong and Thomas H. Canfield, as sureties.

It further appeared in evidence that the original suit in favor of the plaintiffs against the railroad company, and upon which they recovered a judgment as aforesaid, was brought by Charles L. Williams, the general attorney of the railroad company, at the request of their directors and that the attachment of the four locomotives was made by his direction, at the suggestion of the directors for their own personal benefit without the knowledge of

the plaintiffs ; but it did appear that some time after this attachment had been made, and sometime before the replevin of the property was made, but how long subsequent to·the attachment did not appear, the plaintiffs were informed of the commencement of this suit and the attachment of these locomotives, and approved of and adopted such proceedings, and directed Williams to proceed with the suit.

It also further appeared in evidence, that Williams, the same attorney who commenced the plaintiffs' suit and caused such attachment to be made as aforesaid, commenced the replevin proceedings in question at the request of the directors of the railroad company; that he made the replevin writ and replevin bond introduced in evidence, and on the 16th day of May, 1854, aforesaid, delivered such writ and bond to the second constable of the town of Rutland for service, and requested him to·execute the same by replevying the four locomotives attached on the writ in favor of the plaintiffs against the railroad company.

The defendants also introduced evidence tending to show that the constable was reluctant to serve this replevin writ for the reason that he had not given bonds to the town of Rutland, but that it was urged by Williams that it was his duty to serve it, and also that Williams told him that Strong and Canfield, who had signed this bond, were good for the amount of it ; that he would commence a suit against him if he did not serve and execute the writ by replevying the locomotives ; and also that he told the constable that he was the attorney of the plaintiffs, and that such replevin bond would be satisfactory to the plaintiffs ; and that in reference to the extent of the liability of the constable, Williams also advised and told him, that in his opinion, if the bond offered him was good when taken, he would not be liable if its signers subsequently failed and became irresponsible.

The plaintiffs introduced evidence tending to show, that Williams, when he delivered the replevin writ and bond for service, told the constable that he could not advise him ; that all the advice he could give him was, that he must see that a sufficient bond was given ; that he did not know about Canfield's property, who was one of the signers of the bond ; that Strong, the other surety therein, had real estate, and that he did not know of any

incumbrance upon it, and that the constable knew as much about Strong's situation, as Williams did; and that nothing was said to the constable about his being the attorney of the plaintiffs; and that Williams expressed no opinion or made any representation as to Strong's responsibility, except as to what he said with reference to his real estate above detailed, but it did appear that the constable was reluctant to serve the replevin writ, and that there was a good deal of urging him to do so by the directors of the railroad company, and others who were present, not including Williams; and the defendants' evidence tended to show that Williams was present during the time and he .rd these conversations with the constable urging him to serve the writ, and also heard such representations made to him, that Strong was good for the amount of the replevin bond, and expressed no dissent or assent thereto, nor made any objection to his serving the writ upon the security of the bond drawn up and delivered him. The plaintiffs' evidence tended to show that when Williams delivered the replevin writ and bond to the constable, he really acted only as the agent and attorney of the railroad company in the commencement of the replevin suit, and that he did not really or professedly act for any one else, and gave no reason to any body to suppose at any time that he was acting for any one else; and that at the time he delivered the writ of replevin to the constable, and at the time of the service of the same, the constable had no knowledge or information that Williams was or had been the attorney for the plaintiffs in their suit against the railroad company.

Evidence was further introduced showing that upon the close of these conversations as above detailed, and on the 16th day of May, 1854, the defendants' constable executed the replevin writ, by replevying the four locomotives attached on the plaintiffs' writ against the railroad company, and delivered the same to the railroad company, and that Williams made the return signed by such constable, on the copy of the writ of replevin delivered by the constable to the sheriff who held the locomotives on the plaintiffs' attachment.

The plaintiffs also introduced evidence showing that they afterwards commenced a suit in their favor, on the replevin bond

27

aforesaid, and recovered a judgment therein; and that execution was issued thereon in regular form, put into the hands of the officer and returned unsatisfied.

The plaintiffs also introduced evidence tending to show that the railroad company were insolvent and irresponsible at the date of the replevin bond, and have ever since been so, and that Strong and Canfield, the sureties on such bond, were also insolvent and irresponsible at the time they executed it, and ever since had been so, and that the bond had proved entirely uncollectible.

The defendants introduced evidence tending to show that Strong, at the time he signed the bond, was responsible, and that it was good and sufficient, and introduced in evidence as bearing upon the question, various deeds professing to be from the administrators and heirs of Jonathan Parker (but no evidence was given on that point other than what appears upon the face of the deed or deeds,) to Moses Strong, the father of George W. Strong, of different lots of land in Mendon, in connection with proof showing the death of Moses Strong, and the record of the Probate court for the district of Rutland, showing the division of these Mendon lands among the heirs of Moses Strong, together with deeds from the heirs of said Moses Strong to George W. Strong, conveying to him these Mendon lands.

The defendants further introduced in evidence a deed from Moses M. Strong to George W. Strong, dated the 27th of July, 1841, of certain wild lots in Mendon, but no evidence was introduced, showing any actual possession of or title to a part of these lots by either Moses M. Strong or George W. Strong.

On the trial of the case it was claimed by the defendants that if the signers of the replevin bond were at the time of its execution apparently good and sufficient, and that the constable acted in good faith in taking the bond, he should be excused, and not chargeable for a neglect or default of the duty, though the bond in point of fact was insufficient to answer the plaintiffs' demand; and with this view they offered evidence to show that George W. Strong was at that time in good credit and apparently responsible for the amount of the replevin bond and for more, and that he was generally so esteemed.

The court, after hearing counsel, held that this was not the

rule or measure of the constable's responsibility, but that they should adopt the rule as given in their charge to the jury, hereinafter stated, and excluded such evidence.

The defendants, on the trial, called H. H. Baxter as a witness to show Strong's pecuniary situation at the date of the bond, who, after being examined as to his knowledge of the real estate of Strong, and its value, and also as to his personal estate and its value at that time, and having specified and valued the property, real and personal, as far as he was able, and, having stated in his testimony that he knew of no other property of Strong, was asked by the defendant's counsel this question : " from your knowledge of the property of Mr. Strong, what do you think he was worth on the 16th day of May, 1854 ?" to the answering of which the plaintiffs objected, and the court excluded the answer.

The defendants also introduced evidence tending to show that George W. Strong, at the time he signed the replevin bond, was possessed of and owned real estate in his own right, situated in Rutland, to the value of thirty thousand dollars, and that the same was entirely unincumbered ; and the plaintiffs gave evidence tending to show that G. W. Strong's real estate in Rutland was soon after attached by his creditors ; and also introduced in evidence a deed of trust of the same lands to Moses M. Strong to pay creditors, dated May, 1854.

Testimony was also introduced by the defendants showing that the Rutland & Washington railroad company passed into the hands of trustees under a deed of trust or mortgage of that company to such trustees, dated the 24th day of October, 1855, together with the evidence of the managing trustee of that railroad, showing that the road was out of repair when they took possession of it under that deed, and that that company had paid no dividends, and had not monies to pay dividends, the trustees having expended the earnings of the road in making necessary repairs, in rebuilding bridges and putting in new ties and rails ; and in this connection the witness who testified to these facts was asked by the plaintiffs' counsel what in his opinion the road would in future pay exceeding running expenses and ordinary repairs, which question was objected to by the plaintiffs' counsel

and held inadmissible by the court, and the witness was not allowed to answer it.

It was conceded on the trial that the constable who served the replevin writ was duly elected to that office by the defendant town at its regular March meeting holden in 1854.

No question was made by the defendants as to the want of responsibility of Canfield, and there was no evidence that he was worth anything at the date of the bond, and it was not claimed by the defendants to the jury that he was then or had been since in any way responsible.

The court was requested by the defendants to charge the jury as follows :

That if the attorney of the plaintiffs delivered to the constable the writ of replevin and the bond executed by the obligors and now in question, and requested him to serve the writ, the constable was not guilty of any default or neglect in taking the sureties in the replevin bond ; that in serving the writ upon the bond delivered him by the attorney of the plaintiff no official liability could arise, as the whole proceeding was under the control and direction of the attorney ; that the insolvency in fact of the signers of the replevin bond, unknown to the officer, had no tendency to prove him guilty or chargeable with gross neglect or default, as charged in the declaration ; that the question involved in the case was one of neglect or default, and was to be determined with reference to the circumstances existing at the time the writ was served, and was to be considered in connection with the acts and directions of the attorney of the plaintiffs, and that his urging the officer or requesting him to serve the writ, was an approval of the bond, and that the plaintiffs were committed by it ; that it was immaterial whether the constable knew or did not know that Williams was the attorney of the bank ; that if Strong was good for the amount of the bond, independently of his contingent liabilities as endorser for the railroad company, then the bond was sufficient.

The court, among other things not excepted to, charged the jury in regard to the measure of the responsibility of the officer in taking the replevin bond, that it was his duty to take a bond

of substantial sufficiency, and ample to answer the demand, and that it was not enough to excuse the officer that the bond was apparently sufficient, and that he acted in good faith in taking the bond, but that there must have been at the time it was taken and accepted by him, a real, ample and substantial pecuniary responsibility in the signers of the bond, and such as would not probably become insufficient to answer the demand ; and that if they found such was the fact, the officer should be excused (and of course the defendant town) and that their verdict should be for the defendants, although they should find that the signers of the bond afterwards became insufficient and unable to answer the demand at the time when final judgment was obtained on the bond, and that the plaintiffs were unable to recover satisfaction of their judgment at that time by reason of such insufficiency.

The court then proceeded to comment upon the testimony bearing upon the responsibility of the signers of the bond somewhat at length, and to show its application and bearing upon the cause in a manner satisfactory to both parties, excepting as to what was said to the jury relative to what was called on the trial the *Mendon lands ;* and as to them the court told the jury that in determining the question in relation to the responsibility of George W. Strong at the time of giving the bond, they should be taken into the estimate so far, and no further, than the defendants had shown some right or title to them in George W. Strong, who, it seemed, claimed them under his father, Moses Strong, and that as no paper title was shown or claimed to that portion of George W. Strong's real estate, it would be for them to inquire how far the defendants had shown any right or title in those lands by means of any adverse possession of them by G. W. Strong, or those under whom he claimed them ; and that an ancient deed conveyed no title of itself, unless it appeared the grantor had some right or title to convey.

The jury were further told that if they found that this replevin bond was insufficient at the time it was taken, yet if it became sufficient to answer the demand at the time final judgment was obtained upon it, their verdict should be for the defendants ; but that if, however, they found it insufficient, under such instructions as the court had given them, both when taken and when

final judgment was obtained upon it, it would become necessary to consider another point in the cause; and that if, on that point, they found that Mr. Williams, who was the attorney of the bank of Middlebury, in prosecuting and obtaining the judgment in their favor against the railroad company, upon which the property replevied had been attached, and who also acted as an attorney for the railroad company in the commencement of the replevin suit, gave the constable also to understand that he was the attorney for the plaintiffs in their suit against the railroad company, and that he, as such attorney, was satisfied with the responsibility of the signers of the bond, and was willing he should take it, and that the constable took the bond relying upon what Williams had said to him about it, the officer should be excused and their verdict should be for the defendants, though the bond was in fact insufficient.

It being a fact disputed on the trial whether the constable at the time he accepted the bond, had any knowledge or information in regard to Williams having been the attorney for the plaintiffs in their suit against the railroad company, the court told the jury it was important that the constable should, at the time of taking the bond, have been informed, or in some way have known, that Williams was the attorney of the bank; otherwise it was difficult to see how the constable could have relied upon the assent of the bank, to the taking of this bond, as being given through Williams as their agent or attorney. The court told the jury that the naked fact that Williams made the replevin writ, drew the bond, and caused it to be signed and delivered to the constable to serve, and was in fact the attorney for the railroad company in that matter, would not have the effect to excuse the constable of itself, for taking an insufficient bond; but Williams must have gone further, and given the constable to understand, *or at least some good reason* to believe that he, in behalf of the bank, was willing to have the bond by him accepted as being sufficient, to enable the officer to avail himself of this matter as an excuse for taking a bond which turned out to have been insufficient; and if they found that Williams did this, their verdict should be for the defendants. All the testimony bearing upon this part of the case was submitted to the jury with

such remarks as there was no exception to; but to that paragraph in this portion of the charge which stated that it was of importance for the jury to find that the constable had some knowledge or information that Williams was the attorney for the bank in their suit against the railroad company at the time he took the bond, the defendants did except, but no further, excepting to the failure of the court to charge as requested upon this point.

The court charged the jury that the liability of the town was co-extensive with the liability of the officer, had the suit been against him.

The court gave very full instructions to the jury on all points the case called for, and in a manner satisfactory to the defendants, except in the particulars above specified.

The defendants excepted to the several rulings of the court in regard to the rejection of evidence by them offered, and to the admission of evidence offered by the plaintiffs, and objected to by the defendants; and also to that part of the charge above detailed and to the omission of the court to charge as requested by the defendants.

*Linsley & Prout* and *Pierpoint & Nichols*, for the defendants.

1. If any of the signers of the replevin bond, at the time of its execution, were sufficient, or apparently sufficient, and the officer acted in good faith and with ordinary care in taking it, he was not guilty of a neglect or default of duty, and the town consequently are not liable. *Long* v. *Billings*, 9 Mass. 456; Comp. Stat., p. 269, secs. 9–13; *Rice* v. *Homer*, 12 Mass. 132; *Sutton* v. *Wait*, 17 Eng. Com. Law 96; *Scott* v. *Waithman*, 14 Id. 176; *Hindle* v. *Blades*, 1 Id. 86; *Jeffrey* v. *Bastard*, 31 Id. 193; Law Library, vol. 46, 330, 386; Morris on Replevin 212; *Briggs* v. *Taylor*, 28 Vt. 181; 2 Tidd's Prac. 1038; 2 Greenleaf's Ev., sec 186; *Sparhawk* v. *Bartlett*, 2 Mass. 188; 2 Phillips' Ev. 389; 3 Stark. Ev. 1351; 2 Saunders' Pl. and Ev. 803; *Plumer* v. *Brisco*, 63 Eng. Com. Law 44; *Smith* v. *Trawl*, 1 Root 165; *McKinney* v. *Craig*, 4 Sneed (Tenn.) 578; *Chase* v. *Stearns*, 2 Fairfield, 128; *Harriman* v. *Wilkins*, 20 Maine 93; 35 Maine 53; *Gerrish* v. *Edson*, 1 N. H. 82.

2. Upon the facts in the case it cannot be denied that the

property was replevied and the bond taken by direction of the plaintiffs' attorney. This is decisive of the case in favor of the defendants, whether the officer knew he was the attorney of the plaintiffs or not. *Fletcher* v. *Bradley*, 12 Vt. 22; *Strong* v. *Bradley*, 14 Vt. 55 ; *Kimball* v. *Perry*, 15 Vt. 414.

*Geo. F. Edmunds* and *Edward J. Phelps*, for the plaintiffs.

1. The true rule is that the officer, and by consequence the town, are responsible for the sufficiency of the sureties on a replevin bond, at the time they are called on for satisfaction. *Weaver* v. *Lawrence*, 1 Dall. 156 ; *Oxley* v. *Copperthwaite*, Id. 399 ; *Pearce* v. *Humphrey*, 11 Serg. & R. 23 ; *Gibbs* v. *Bull*, 18 J. 335.

The defendants therefore cannot object to the charge of the court which was more favorable to them than the law.

2. The law of the charge has long been the settled rule in this State, in regard to bail on *mesne* process, under a statute which expressly exempts the officer from liability if the bail is good when taken. Comp. Stat. 249, sec. 51 ; *Hazard* v. *Slade*, 1 D. Chip. 100 ; *Harrington* v. *Bogue*, 15 Vt. 170; *Sherman* v. *Blodgett*, 28 Vt. 149.

(The statute relative to replevin bonds is more strict than that in regard to bail.)

3. The mere fact that Williams was the attorney of the bank, which is all that, under the charge of the court and the finding of the jury, the defendants have to stand on, does not make his act, as the attorney of the railroad company, in sueing out the replevin, the act of the plaintiffs by implication of law.

ALDIS, J. The main question in this case is as to the true construction of our statutes requiring the ·officer, who serves a writ of replevin of goods attached, to·take a bond with sufficient surety. What is the measure of the sufficiency required ?

Three views are taken upon this subject.

I. That the surety must be apparently responsible, the officer acting in good faith, and making diligent and reasonable inquiry. This is·the position of the defendants.

II. That it is not enough that the surety be *apparently* responsible, but that he must be *really* so ; so that though in good

Bank of Middlebury *v.* Town of Rutland.

credit and apparently solvent, still if in fact he is not solvent to the amount required, the officer is liable. This was the rule of law adopted by the court below, and to which exception is taken.

III. That the surety must not only be really good at the time bond is taken, but also up to the time of judgment, so that the plaintiff shall be able to recover satisfaction if he pursue and obtain judgment on the bond. This is the doctrine contended for by the plaintiffs.

The question is an important one in practice. Counsel have been most thorough in their research, both as to the ancient and modern law of replevin. We have endeavored to examine the subject with care, and though not entirely agreed upon the point, are still enabled to concur so as to decide the case.

The statute of Westminster (13 ed. 1) provided that the sheriff should take the plaintiff's pledges for the pursuing the suit, and for a return of the property. It did not use the word sufficient, or in any way specify the liability of the sheriff for insufficiency of the pledges; except as may be inferred from the clause " if any take pledges otherwise, he shall answer for the price of the beasts." Under this statute the ancient rule in England appears to have been that the sheriff should be liable for the sufficiency of the bail to respond the final judgment. If the sheriff took insufficient pledges, he was charged " as if he had taken no pledges at all." 2 Co. Inst. 340; *Corcaren* v. *Lethbridge*, 2 H. Bla. 40.

But since the adoption of the statute of 11 Geo. 2d c. 19, the rule has been modified and become more lenient towards the officer. It is now held that if the sureties are apparently responsible when taken, the sheriff, acting in good faith and with reasonable diligence and inquiry, is not liable, though they are in fact irresponsible. This was so held in *Hindle* v. *Blades*, 5 Taunt. 225 ; and that case appears to have been uniformly followed in the English courts. *Sutton* v. *Wayte*, 8 Moore 27, (17 E. C. L. 96 ;) *Scott* v. *Waithman*, 3 Stark. 168, (14 C. L. 176 ;) *Jeffery* v. *Bustard*, 4 Ad. & Ell. 823 (31 E. C. L. 194.)

In this country the question seems rarely to have arisen. It would seem that it was held in Massachusetts, that if the sureties " were reputed to be of sufficient ability," the sheriff

was not liable. DEWEY, J., in *Rice et al.* v. *Hosmer*, 12 Mass. 130. But the point is not expressly so ruled in any of the cases cited by the defendants; nor have we been able to find any. So it would seem to be in Connecticut, 1 Root 168, " the bond must be *apparently* good."

In Pennsylvania the rule was established at an early day, that the sheriff was liable for the sufficiency of the sureties at the end of the suit. 1 Dall. 349; 14 S. & R. 23; 3 Watts & S. 538.

It is to be observed, however, that in all these cases the courts of Pennsylvania have protested against the harshness and severity of the rule they felt required to recognize.

It is obvious that if the sheriff is to be responsible, not only for the sufficiency of the sureties at the time he takes their bond, but for their remaining sufficient till the end of the suit, he is thereby made liable for the debt, though at the time he takes the bond (and he is required by law to take it) he discharges his whole duty, and does all that he can do to secure, and does in fact, at the time, fully secure the debt of the creditor. This makes him responsible for all the risks, misfortunes and vicissitudes of business that may befall another, over whose conduct and affairs he can have no control; to guarantee his solvency not only when taken, or for some fixed period thereafter, but for the whole indefinite period of time through which the principal litigation may be prolonged.

If a bond is really good, and likely to remain so, the sheriff can not refuse it without making himself liable to be sued by the creditor. And yet by this harsh doctrine, if he does take it, that same creditor may afterwards sue him for doing the very thing which he also might have sued him for refusing to do.

The letter of the statute, sec. 13, certainly very strongly favors this extreme doctrine. It seems to point directly to this result. But when we consider how unreasonble and unjust the result is, we can not regard such an interpretation as being within the real intent of the Legislature.

The object of the replevin bond is to furnish the creditor a security to stand in the place of the property attached. It bears the same relation to the property attached that bail or mesne process does to the person of the debtor when arrested. One

secures the return of the person; the other of the property. If, upon final judgment, there is no return, the surety becomes liable to the creditor for the debt which the return of the person or property would have secured. As the statutes relating to bail on mesne process, and to sureties on replevin bonds, have thus the same end in view; and as officers have in substance the same official obligations, courts, acting upon this analogy, have endeavored, in their decision in regard to the liability of bail, and of sureties, and of sheriffs for the insufficiency of bail and sureties, to be guided by a common principle. See *Sparhawk* v. *Bartlett*, 2 Mass. 188.

Now in this state the liability of the sheriff for taking insufficient bail on mesne process, has been fully considered and finally determined. It is not enough that the surety is apparently good, he must be really so, and such as will probably continue good to answer the demand. This was decided long ago, in *Hazzard* v. *Slade*, 1 D. Chip. 199; and reaffirmed in *Harrington* v. *Bogue*, 15 Vt. 179. It is obvious that the judge in the trial of this case in the county court, intended to follow these decisions; the charge is almost in the words of the decision in *Hazzard* v. *Slade*. We think the rule adopted by the court below is the right one. It harmonizes our decisions upon a subject where every rule of reason and analogy requires them to be the same. It is in accordance with what we deem to be a legislative construction of the old statute of 1797, by the act of 1806, in reference to bail on mesne process.

It is consistent too with the spirit of our attachment law — to secure the creditor by substituting a bond really good for the property attached. Less than this would impair the security. The more stringent rule adopted in Pennsylvania, would make the bond better than the property; for the property by waste, lapse of time, fluctuation of markets, and expense in keeping, often greatly depreciates in value, and becomes an insufficient security.

It is urged by the defence, that the English law, that the sheriff who, acting with reasonable diligence, and upon due inquiry, takes a surety apparently good, shall be protected against further claim, is the more reasonable rule. If it were a new question,

Bank of Middlebury *v.* Town of Rutland.

we might hesitate whether that doctrine ought not to be adopted, for it seems to be just and fair; and exacts of the sheriff as much and no more than he can perform. But its adoption now would, we think, tend to unsettle the law in analogous cases. In practice, we think the operation of the two rules would almost always be the same; for it would be very rare that an officer, who has the right to insist upon unquestionable security, and who should make due inquiry and use all reasonable diligence, would be deceived into taking sureties ostensibly good, but really worthless. This rule, adopted by the court nearly half a century ago in regard to bail on mesne process, has not been found by experience to be either impracticable or oppressive upon officers. Should further experience prove it to be so, it would doubtless be modified by legislative action.

We conceive that " the default or neglect," which makes the officer. liable, is the criterion also of the liability of the town for the officer.

The defendants claimed that Williams, as the attorney of the plaintiffs, assented to the constable's taking the bond, and that such assent discharged the constable from liability. Clearly it would; and so the court charged.

But if Williams was attorney for both the plaintiffs and the railroad company, as he was, then whether his assent to the taking of the bond would bind the plaintiffs, would depend upon the capacity in which he acted, or gave the constable to understand he acted. If the constable did not even understand that he was attorney for the plaintiffs, he could not understand that he was acting for them. Hence the charge of the court, that the constable should have been informed or in some way have known that Williams was the attorney of the bank, was correct; for without such information he could not have supposed that the plaintiffs were assenting to the bond; but must have understood, that he was dealing alone with the railroad company.

The fact that Williams was the attorney for the bank in the suit in which the engines were attached, did not prevent his being the attorney for the railroad company in the writ of replevin. So long as he acted as attorney for the railroad company, and did not assume or appear to act as the attorney of the bank, his

action would bind only the railroad company. If Gibson, the constable, knew that Williams was attorney for the bank, as well as attorney for the railroad company, then it was his duty to ascertain in what capacity he was acting in the matter of the bond. Williams might draw the bond and cause it to be signed and delivered to Gibson in his capacity as attorney for the railroad company; indeed if he drew the writ of replevin, the more natural presumption would be that he was so acting. But if he said or did any thing to give Gibson to understand that he was acting for the plaintiffs in that matter, then his interference would bind the bank and release Gibson. This was the substance of the charge, and we find no error in it in this respect.

In regard to the Mendon lands the bill of exceptions is obscure both as to the evidence offered and the application of the charge to the evidence. It is said " no evidence was introduced showing any actual possession of or title to a part of the lots deeded by Moses M. to George W. Strong ;" and this is all that appears in regard to any evidence to show possession of the Mendon lands. From this we may reasonably infer that there was proof to show actual possession of some of the lots so deeded by Moses M. to George W. Strong.

As to wild lots of which no possession was taken, the mere proof that George Strong had a deed on record of such lots shows no title in him. To make such showing proof of ownership, it should be accompanied either with proof of possession corresponding to the deed, or with proof of a paper title. Upon this point the charge very properly stated that an ancient deed on record conveyed no title *of itself*, unless it appeared that the grantor had some right or title to convey. What the charge was on the subject of possession corresponding with and accompanying a deed on record does not clearly appear ; counsel seem to differ in their arguments and briefs, as to the character of the charge. If the court below could have been understood by the jury that possession by Strong or his grantors of lands of which he had a deed, would not be evidence of his ownership unless the possession was continued for fifteen years, the charge would be erroneous. But we do not feel at liberty to so construe the exceptions. The bill states that the court gave very full instruc-

tions to the jury on all the points the case called for, and such as were satisfactory, and unless error plainly appears, we should not be justified to assume it upon inference or doubtful expressions.

The opinion of Mr. Woodbridge, as to what would be the future net profits of the Rutland & Washington Railroad, could only be a conjectural estimate of future speculative profits,—a kind of proof quite too uncertain and remote to guide the minds of jurymen in determining what was the actual responsibility of the railroad company five years before.

The case has been argued on behalf of the defendant, as if the court had excluded evidence to show that Strong was reputed and generally believed to be solvent at the time the bond was given. The exceptions say, the defendants claimed that if the sureties were apparently good at the time the bond was signed, Gibson was not chargeable, though in fact they were insufficient; and, " *with this view,*" offered evidence to show that Strong was in good credit and apparently responsible, but that the court held the rule to be that the surety must not only be ostensibly but really good at the time, and excluded the evidence. The evidence as offered for this purpose was inadmissible. If offered to show that he was really responsible, we think it should have been admitted. A man's credit—his reputation among his neighbors and those who have dealings with him for solvency—is evidence tending to show that he is in fact, solvent. Our experience in life and business shows that men who are generally reputed and believed to be responsible by those who deal with them generally are so in fact. Men in business act and give credit upon such reputation. The very words, " in good credit," " in bad credit," refer to such general opinion and belief. Now this fact, that a man is generally reputed and believed to be solvent or insolvent, may be proved like any other fact, and is admissible as tending to establish the existence of the fact so generally believed to be true. In 2 Phil. Ev. (C. & H. notes) p. 702, this kind of evidence, though in the nature of hearsay, is stated to be admissible and as being the best evidence of the state of a man's property ; and the opinion of the court in *State* v. *Cochran,* 2 Dev. N. C., is cited very fully and directly to this point. In *Scott* v. *Waithman,* 3 Starkie 170, such evidence was

admitted.    In *Hard* v. *Brown*, 18 Vt. 90, such evidence was also held admissible.

It is also objected that Baxter, a witness who testified as to the amount and value of Strong's real and personal estate, and told all he knew about it, and that he knew of no other property of Strong's, was excluded from answering this further question, " from your knowledge of the property of Mr. Strong, what do you think he was worth on the 16th of May, 1854." This raises the question, whether the opinion of a witness, who is acquainted with the state and value of a man's property, and who has testified as to all the facts which he knows upon the subject, must be admitted as to the solvency or insolvency of the person.    If the opinion is founded upon the facts he has testified to, it would seem to be but the mere summing up of his testimony, which the jurors could do as well as the witness. Such we deem to have been this case.    He does not appear to have testified to any facts, or to have known any facts beyond those he had already stated, and hence his opinion would be a mere summing up of his previous statement.    Whether he should do this, must be in the discretion of the court.

The case is distinguishable from *Hard* v. *Brown*, and *Sargeant* v. *Blodgett*, as in those cases the witness would seem to have stated his opinion upon other facts, less clearly to be shown than the ownership of tangible property, and difficult to be described, other than by opinion.

Judgment affirmed.