Austin *v.* Town of Burlington.

## SALLY AUSTIN v. THE TOWN OF BURLINGTON.

*Assumpsit. Promissory Notes. Attachment. Action. Towns. Constable. Officer. Receipt. Execution.*

Whether an indorsee of a promissory note can maintain assumpsit upon the general money counts against a prior indorser, known to be an accommodation indorser when the note was negotiated, *quere.*

An action of general assumpsit was commenced by the indorsee of a promissory note against a prior accommodation indorser, and property was attached by a constable thereon. After the entry of the suit in court, the plaintiff filed an additional count to his declaration, declaring specially upon the note and indorsement, and obtained judgment upon such additional count only. *Held,* in an action against the town for the neglect of the constable to keep the property attached to respond to the execution (the plaintiff's attorney having proved by parol testimony, that the original declaration was made to recover solely upon the note described in the special count,) that the additional count did not introduce a new cause of action, and that the constable was not discharged from his obligation to the creditor to preserve the property attached to respond to the execution.

When it does not appear from the record that the new counts are for the same cause of action as the original declaration on the common counts in assumpsit, the burden of proof rests upon the party seeking to establish that they are for the same cause of action; and this may be shown by parol testimony.

The direction by an attorney of an attaching creditor to the officer holding the writ not to attach real estate, does not relieve the officer from liability for not keeping personal property, attached by him upon the same writ, to respond to the execution.

The consent of the attorney of an attaching creditor that the officer may take receiptors for the property attached, given generally, and without naming any receiptors or giving any expression as to the responsibility of those to be taken, and a request to the officer that, before he removes the property attached, he will go to the debtor and see if he will furnish receiptors, do not release the officer from his official liability for the responsibility of the receiptors, in case he allows the property to go into their hands.

Where a constable, who had attached property upon mesne process, had removed from the State, it was held a sufficient demand of property attached to charge it upon the execution, to demand it of the selectmen and town agent of the town, and of one of the persons whose accountable receipt the constable had taken for the property.

An attaching officer, who delivers the property attached to receiptors and takes their accountable receipt therefor, is not discharged from liability to have the property to respond to the execution, by the fact that the receiptors, when taken, were actually responsible, but afterwards became insolvent.

Anstin *v.* Town of Burlington.

. CASE to recover of the defendant, for the default of one Taylor constable of the defendant town, in not keeping, so as to have forthcoming upon execution, certain flour attached by him, as constable, upon a writ in favor of the Bank of Malone against J. & J. H. Peck & Co., the demand upon which said writ was issued being the property of the plaintiff. The defendant pleaded the general issue, and a special plea that the suit of *Bank of Malone* v. *J. & J. H. Peck & Co.* was commenced solely as an action of general assumpsit, and the attachment in question was made thereunder, while in that form, and that afterwards the plaintiff in that action filed therein certain additional special counts to the original declaration, declaring against the Pecks as prior and remote indorsers of certain promissory notes therein described ; that the judgment in that action was rendered solely on such special counts, and that the Pecks were merely accommodation endorsers upon said notes, and that the attachment by Taylor, described in the declaration, was not an actual taking thereof, but solely a formal and nominal attachment. The plaintiff replied that the additional counts named in the plea were for the identical causes of action for which the suit was commenced, and sought to be recovered for under the general counts. The defendant rejoined, denying this last allegation.

The cause was tried by jury, at the March term, 1860, in Chittenden County, KELLOGG, J., presiding.

The plaintiff put in evidence the writ in the suit of *The Bank of Malone* v. *J. & J. H. Peck & Co.*, dated August 4, 1854, with the return thereon by said Taylor, as constable, with the proceedings in said suit ending in a judgment in favor of the plaintiff therein, at March Term, 1856, of the Chittenden County Court.

The plaintiff proved that said Taylor, on and after the 4th day of August, 1854, down to the 23rd day of December, 1854, was constable of said town, and duly qualified as such, and that said writ in favor of the Bank of Malone, was, on the 5th day of August, 1854, put in his hands for service by Jacob Maeck, the attorney of the plaintiff therein, and that said Taylor made the return which is endorsed upon said writ.

The plaintiff further proved, that execution duly issued upon

said judgment, dated April 7, 1856, and on the 21st of April, 1856, being within thirty days from the rendition of said judgment, was delivered to Samuel Huntington, then and thereafter, during the life of said execution, constable of said town, and duly qualified as such, for service and collection, who afterwards, viz: on the 5th day of May, 1856, returned said execution to the office of the Clerk of said Court, wholly unsatisfied, with the proper return endorsed of *nulla bona* in proper form.

The plaintiff introduced said Huntington as a witness, and he was allowed by the Court, against the objections of the defendant, to testify, and did testify, that Taylor, in the Spring of 1855, removed with his family from the town of Burlington to Detroit, Michigan, and had never since returned to this State ; that he made no demand of Taylor for the property attached, nor had any communication with him; but that while he so held the execution in his hands, he called upon John Peck and Edward W. Peck, two of the debtors therein, and the only ones who resided in this State, and demanded of them the property attached and payment of the execution ; and also at the same time, was informed by Jacob Maeck, the creditor's attorney, that Henry W. Catlin had receipted the property to Taylor, and he demanded the property attached, of Catlin ; and also at the same time demanded said property of the selectmen of said town, informing these several parties that he held said execution for collection, and that he demanded said property by virtue thereof ; and also at the same time, said Huntington made known to George F. Edmunds, then the agent of said town, to prosecute and defend suits in which said town was interested, that he held said execution for collection, and demanded the property of him. All this was done within thirty days after the rendition of said judgment. No other demand was attempted to be proved by the plaintiff.

Upon this point the defendant put in evidence, that the said Taylor, ever since his removal to Detroit, in the Spring of 1855, had resided there, and had a place of business there, and that it was generally known in Burlington from the time of his removal from this State, that he so resided in Detroit; and that the distance from Burlington to Detroit was about 650 miles, and required 36 hours travel from Burlington to reach Detroit.

Upon this evidence, the defendant claimed that the property attached was not duly "taken in execution ;" but the Court held that this evidence, not being contradicted, did, if believed by the jury, prove a taking in execution of the property attached, sufficient to establish the plaintiff's case on this point.

The plaintiff proved by Jacob Maeck, against the objection of the defendant to the admission of the testimony, that the plaintiff's agent brought him the notes described in the defendant's special plea, on the 4th of August, 1854, with directions to bring a suit upon them against J. & J. H. Peck & Co., and that he accordingly made out the writ with the general counts in assumpsit only, and put it into Taylor's hands for service ; that he kept the notes after the writ was entered in court, that he filed specifications under the general counts, describing accurately the notes left with him by the plaintiff's agent, and which were the only notes or demands against J. & J. H. Peck & Co., which he had in favor of the Bank of Malone, and that afterwards he filed the special counts referred to in the defendant's plea ; and that the judgment was made up on these notes and on nothing else.

The defendant then offered to prove that J. & J. H. Peck & Co. were mere accommodation indorsers on said note and that this fact was known both to the Bank of Malone and the plaintiff, and was proved on the trial of the suit in favor of that Bank against them. The court excluded the testimony.

The defendant also offered in evidence the following deposition of said Taylor :

"I, S. W. Taylor, of Detroit, in the County of Wayne, and State of Michigan, of lawful age, depose and say, that I was acting as constable of Burlington, Vermont, in August, A. D., 1854. On or about the fifth day of August, A. D., 1854, I received a writ of Jacob Maeck, in the suit the Bank of Malone against John Peck, John H. Peck, and Edward W. Peck. Said Maeck was acting as the attorney of said Bank. Mr. Maeck then gave me a paper of which the following is a copy,"

" Mr. Taylor, Sir :—

My orders are to make immediate attachment. I can hardly think it necessary. But I agreed to pursue

the order. John H. Peck is not at home. I wish you to go immediately to the Doctor and tell him what you want, and no doubt he will do the thing needful.

The debt is $5000 and some little interest and costs. Make no unnecessary stir. If you want to see me, you will find me until about 9 o'clock at my room ; after that time, at the Judge of Probate's office. As I agreed to send word whether all was done up right, please see me as soon as you conveniently can. They wanted both real and personal estate attached, but the Pecks do not desire an attachment of real estate to appear on the record, and they can get any security for personal estate. They consented the real estate need not be taken, if enough of personal was found.                    Respectfully yours,

August 5th, 1854.                                     J. MAECK. "

He further told me to go quietly to John Peck and tell him what I had in my hands and make no disturbance.

When Maeck brought me this writ, he told me that Mr. Austin, who gave him the notes upon which the suit was founded, wanted real and personal property attached ; but he, Maeck, did not think it was necessary to attach real estate, and I need not do it. Maeck said he presumed Peck would give me a good receipt or would get receiptors. I cannot tell which expression he used. From Maeck's conversation and what is said on the paper, I understood the phrase, " the thing needful, " in the paper above recited, to mean that the Pecks would get good receiptors.

In pursuance of such instructions, I served said writ by attaching two thousand barrels of flour as the property of the Pecks, and took an accountable receipt therefor in the usual form signed by H. W. Catlin and Wm. Wilkins, Jr. I did not make any disturbance, nor take possession of the flour. I did not see the flour. Catlin & Wilkins were then in good pecuniary standing and credit, They had real and personal property in their possession as owners at that time, to a much greater amount than the claim in said writ.

I had no knowledge, nor information, nor suspicions that Catlin & Wilkins were insolvent, or going to fail at that time, nor the firm of J. & J. H. Peck & Co.

Soon after I made said attachment I saw said Maeck, and told him the attachment was made, and that I had got receiptors. Maeck did not find any fault or express any dissatisfaction with what I had done.

I have never taken the property so attached into my possession or control. Catlin & Wilkins failed suddenly, and I never had any opportunity to take possession of said property. And the Pecks also failed suddenly, and since their failure there has been no opportunity to my knowledge, to improve said security. Since I took said receipt, I have held it, and still hold it for the benefit of all parties concerned."

The defendant also offered to prove that town agent, while the execution v. J. & J. H. Peck & Co. in their favor of the Bank of Malone was in Huntington's hands for collection, procured of Taylor the receipt for the flour attached which he had taken as mentioned in this deposition, and in behalf of Taylor demanded of the signers of it within 30 days after the rendition of the judgment, the property therein described, and offered the receipt to Maeck as the plaintiff's attorney, and authorized him to use Taylor's name in any steps necessary to enforce it, at the same time informing Maeck that Taylor had written the town agent that the receipt had been taken by Maeck's directions. This Maeck then denied and declined to take the receipt. The defendant also offered to prove that at the time the writ was put into Taylor's hands for service and until October 10th, 1854, J. & J. H. Peck & Co. and Catlin and Wilkins were largely engaged in business in Burlington, were in good credit, had in their hands respectively unencumbered real and personal estate to many times the amount claimed in the writ, and that in taking the receipt Taylor used all the care and discretion that a cautious and prudent man engaged in like service could be expected to use.

But the court excluded Taylor's deposition, and all the evidence so offered, and, it being admitted by the defendant that said judgment and execution had never been paid, and that the flour attached by Taylor was of sufficient value to satisfy the amount due thereon, directed the jury to return a verdict for the plaintiff for the amount due on said execution, which was done,

To the several rulings and directions of the court above recited the defendant excepted.

*Roberts & Chittenden*, for the defendant.

*J. Maeck and E. J. Phelps*, for the plaintiff.

ALDIS, J. The Bank of Malone sued J. & J. H. Peck & Co. The declaration contained only the money counts. The Bank's claim was as indorsee of two promissory notes, of which the Pecks were prior and remote indorsers. The indorsements were in blank. The Pecks were accommodation indorsers. In the County Court the plaintiff amended the declaration by adding special counts on the notes. The defendant, here sued for default of its constable, in not having the property attached on the writ forthcoming upon the execution, claims that the amendment dissolved the attachment by introducing a new cause of action.

That an indorsee may sue a prior and remote indorser, and recover on the money counts, would seem to be the tenor of modern decisions. 11 Pickg. 316 ; *Rushworth* v. *Moore*, 36 N. H. 188 ; *Johnson* v. *Catlin*, 27 Vt. 87.

Whether this is true as against a mere accommodation endorser, known to be such when the note is negotiated, seems more doubtful. 14 Vt 228 ; 27 Vt. 87 ; 7 Wheat. 35 ; 1 Denio 105. Though a party may not be able to recover against a surety on the count for money had and received, yet, on the count for money paid, it would seem as if the action ought to lie. Each indorser impliedly promises subsequent indorsers that he will pay the note if the maker does not, and that if any of them should be compelled to pay it, he will pay them back the money they so pay for him. Payment by the subsequent indorsees would seem clearly to be money paid for prior indorsee, and at his implied request. See 36 N. H. 188 ; 26 Vt. 19. Upon this point it is not necessary to pass, as we all concur in holding that the amendment, if necessary to enable the Bank of Malone to recover against the Pecks, was not the introduction of a new cause of action, so as to dissolve the attachment.

An attaching creditor has not, as against subsequent attach-

ing creditors, receiptors or sureties, any right to amend his declaration so as to enhance his damages and increase his lien upon the property attached beyond the amount originally and really intended to be sued for. But so long as he acts in good faith and embraces in his new declaration only the original cause of action intended to be described, he may, without hazard to his security, correct by amendment all mere errors of form, of misdescription and of want of technicality. Officers and all others, who may become liable for the debtor, act with the knowledge that courts have this power of allowing amendments—that its exercise is highly useful in the administration of justice ; and that their liabilities must be assumed subject to its reasonable application.

When the record substantially shows that the new counts are for the same identical cause of action as the old, no question can arise ; but where the record does not show this, (as in this case,) and the new counts may embrace new causes of action, then the law, *prima facie*, presumes that the judgment does embrace new causes of action not embraced in the original declaration, and casts the burden of proof upon the plaintiff to show that in point of fact no new cause of action, no additional sum in damages has been included in the judgment. Nor is the plaintiff bound to show this by the files and records of the court. Parol evidence—the testimony of his attorney—is admissible for this purpose. The common counts contain no statement of the specific claims of the plaintiff. Without parol evidence, therefore, it is impossible to tell the amount of the claims for which the property attached will be held to respond, or what the specific claims are.

This subject has recently been before the Supreme Court of Massachusetts, in the case of *Wood* v. *Denny*, in the 7th Gray 540, and directly decided as above indicated.

In New Hampshire, *Laighton* v. *Lord*, 9 Foster 257, the question has been very carefully examined, and the court have held the same doctrine. The authorities have been so fully examined and carefully weighed in these two cases, and the reasoning and conclusions of the court are so satisfactory, that we deem a further reference to the adjudged cases superfluous.

The rule is also stated in Drake on Attachment in substantially the same way. Where the writer says, § 285—" If, however,

34

such an intent " (the intent to include the amended claims in the original suit) " can not be inferred from the writ and declaration, the new counts will be considered to be for other and not for the original causes set forth," we understand him to mean that such is the *prima facie* presumption of the law, and thus casting the burden of proof on the plaintiff to repel the presumption. The language is taken from the opinion of Judge Putnam in *Fairfield* v. *Baldwin*, 12 Pick. 395, and should be construed with the light thrown upon that case by the remarks of Judge Fletcher in *Felton* v. *Wadsworth*, 7 Cush. 589, and by the more recent decision in *Wood* v. *Denny*.

II.    Another question is, were the directions given by the plaintiff's attorney in regard to the attachment, such as would exonerate the officer from his official responsibility ?

In the leading case of *Strongs* v. *Bradley*, 14 Vt. 64, the letter of the creditor was construed—and that was its fair and natural meaning—to invest the officer with a discretion either to pursue the legal course or to omit it, as, in his judgment, he thought best. Nothing can be plainer, than that in such case the officer ought not to be held responsible for the strict performance of his official duty, for he is permitted by the creditor to forego it if he see fit.

To exonerate the officer from liability the directions given by the creditor must release the officer from pursuing the strict line of official duty, and authorize him to do something which he was not in law bound to do ; they must have influenced the conduct of the officer (though this is presumed where they have any such tendency, and it is for the creditor to rebut the presumption,) and the loss of the debt must result from his following such instructions, and not from his neglect or fault, when acting in the line of his legal duty.    It is not every act of interference by the creditor, that wholly releases the officer thereafter from pursuing his official duty.    Officers often act to some extent under the directions of the creditor in attaching property, and still in other respects, and subsequently in their acts in regard to the property attached, are liable strictly as officers.    Thus, if the creditor direct the officer to attach certain personal property of the debtor, and not to attach real estate or any other personal property, it is clear that the officer would not be liable for neg-

lect in omitting to attach the real estate or other personal property excluded by the creditor, even though the property attached should be wholly unproductive of security to the creditor. But if the property so attached belong to the debtor and is sufficient to secure the debt, and the officer by his neglect allows it to return to the possession of the debtor so that it is lost to the creditor, clearly for such neglect the officer should be held liable. Such direction exonerates the officer from attaching any other property than what the creditor specifies, but it does not exonerate him from attaching and safely keeping that. If he neglect safely to keep the property attached, he can not excuse his neglect by saying, that if not specially instructed to attach personal property he might have attached real estate. Assuming to attach personalty, he must have understood that he was acting as an officer, and would be held liable as such for the attachment he actually made and that he was exonerated only as to what he was directed not to take.

The direction in this case, not to attach real estate, exonerated him from not taking real estate ; but it did not release him from his liability as an officer for the two thousand barrels of flour which he did attach. It would be absurd to say that he understood because he was told not to attach realty, that he was therefore acting merely as the servant of the plaintiff in attaching and holding the flour, and that his official responsibility as constable was ended. In *Howes* v. *Spicer*, 23 Vt. 508, the creditor directed the officer to attach fifty kegs of powder and nothing else. The debtor had other property. The loss arose from the officer's not taking and returning as attached the fifty kegs of powder. *Held*, such directions did not exonerate the officer.

In *Mason* v. *Ide*, 30 Vt. 697, the creditor gave directions which if pursued would have released the officer ; but the officer instead of following them did what he was not authorized to do. The court held that he must use reasonable judgment in regard to the meaning of the instructions and follow them in order to be released, and as the loss arose from not following the instructions strictly he was still liable as an officer. The rule of law is well expressed by Judge Morton in *Dunham* v. *Wild*, 19 Pick. 520 : "If the plantiff does interfere, he cannot recover against

the officer *for any loss which might result from following his advice or directions."*

2. The letter of Mr. Maeck and the deposition of Taylor, taken together, show that the instructions given by the attorney to the officer were equivalent to this, " for the personal property you attach you may take receiptors, and before you remove it you may go to the debtor and see if he will furnish receiptors."

Did this language justify the officer in understanding that he could safely omit any official duty, or be released thereby from his official liability for the ultimate responsibility of the receiptors in case he allowed the property to pass into their hands? We think not.

The taking of a receipt for property attached is a common mode of perfecting an attachment. It saves expense to all the parties, relieves the officer of the care and custody of the property and gives the creditor all he seeks for by his attachment, viz: security for his debt. It is at once so convenient and so safe a mode of securing all the purposes of an attachment that it has been adopted universally in practice; and though not authorized by statute is recognized in law as an official act having definite and well settled rights, duties, and obligations. Officers usually take good receipts whether instructed to do so or not. It is so much a matter of course that an officer will do so, that no one at all conversant with such business would either ask for or expect any directions on the subject. Hence the mere general remark that the officer may go to the debtor and see if he will furnish receiptors before moving the property, would not be ordinarily understood as discharging the officer from his strict official duties and liabilities. It would only be understood as expressing that wish in regard to the attachment which officers and creditors generally feel and express; that nothing should be done to make cost, or annoy or disturb the debtor, if the attachment can be perfected in the usual way by a receipt satisfactory to the officer and for which he is willing to be ultimately responsible.

If more than this was meant, the creditor or the attorney would advise as to the sufficiency of the receiptors; and the officer would require directions as to the receiptors he might accept.

We see nothing therefore in the letter of Mr. Maeck and the

deposition of Mr. Taylor to show that the officer could have been misled in the least by the language or letter of the attorney to think that he was not to be held liable for the property to be attached to the same extent, and with the same strictness as to the ultimate responsibility of the receiptors, as if he were acting without any other instructions than those contained in the writ.

III. The demand upon the officer was all that the nature of the case admitted. To require demand at Detroit would be unreasonable and impracticable.

IV. As to the defence that the receiptors were solvent, and likely to remain so, when taken by the officer, the recent decision in *The Bank of Middlebury* v. *The Town of Rutland*, 33 Vt. 414, makes it unnecessary to dwell upon that point. The principle of that decision must control this.* Judgment affirmed.

*See *Gilbert et ux.* v. *Crandall, ante* p. 188.—REPORTER.